## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

IN THE MATTER OF THE          :          Hon. Mark Falk, U.S.M.J.
EXTRADITION OF DIEUSEUL JEAN  :
                              :          Mag. No. 13-3588
                              :

---

## MEMORANDUM OF THE UNITED STATES IN SUPPORT OF
## THE EXTRADITION OF DIEUSEUL JEAN

---

PAUL J. FISHMAN
United States Attorney
970 Broad Street
Newark, New Jersey 07102
(973) 645-2700

On the Brief:

ELIZABETH M. HARRIS
Assistant United States Attorney

## INTRODUCTION

On March 19, 2013 the United States filed an initial complaint (Mag. No. 13-3588 (MF)) (hereinafter, the "Complaint") for the extradition of Dieuseul Jean (also known as Jean Gardy Mentor, hereinafter "Jean") at the request of the Government of Canada, pursuant to the Extradition Treaty between the United States of America and Canada of December 3, 1971. *See* Extradition Treaty, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, as amended by Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. TREATY DOC. NO. 101-17 (1990) and Second Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 12, 2001, S. TREATY DOC. NO. 107-11 (2002).  In this matter, the United States acts on behalf of the Canadian government in accordance with United States' treaty obligations.

Canada has submitted a formal request for Jean's arrest, extradition and surrender, supported by appropriate documents, to the United States Department of State.  If Jean does not waive or consent to extradition, then by statute this Court must hold a hearing to consider the evidence of criminality presented by Canada and to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention."  18 U.S.C. § 3184; *see Sidali v. I.N.S.*, 107 F.3d 191, 195 (3d Cir. 1997), *cert. denied,* 522 U.S. 1089 (1998).  If the Court finds the evidence sufficient, it must "certify the same" to the Secretary of State, who decides whether to surrender the fugitive "according to the treaty."  18 U.S.C. § 3184. [1]

---

[1]After the Court has completed its "limited inquiry, the Secretary of State conducts an independent review of the case to determine whether to issue a warrant of surrender."  *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 829 (11th Cir. 1993).  "The Secretary exercises broad discretion and may properly consider myriad factors affecting both the individual defendant as well as foreign relations, which the extradition magistrate may not."  *Id.*

As summarized in the Complaint, Jean is wanted by Canada to stand trial on the charge of first degree murder, an offense that corresponds to murder under United States law (*see* 18 U.S.C. § 1111).

## **BACKGROUND**

In December 1995, Jean was prohibited by a Canadian court order from contacting Juthlande Pierre ("Pierre").  Complaint ("Compl.") ¶ 5(a).  Nonetheless, Jean was with Pierre from December 23, 1995 until December 25, 1995, when Pierre was last seen alive.  Id.  On December 24, Pierre called a friend, Ainnan Ahmed Farhan ("Farhan"), about attending a party.  Compl. ¶ 5(b).  That evening, Farhan picked up Pierre and Jean, drove them to the party, and drove them back to Pierre's home at approximately 4:30 a.m. on December 25.  Id.  Farhan entered Pierre's home and left approximately 15 minutes later.  Id.

At 12:30 p.m. on December 25, 1995, Marie Luce Alteme ("Alteme"), a friend of the victim, called Pierre's home.  Compl. ¶ 5(c).  Jean answered Pierre's telephone and told Alteme that he had not seen Pierre since the previous morning.  Id.  At approximately 1:00 p.m. the same day, Jean borrowed a hammer from Pierre's neighbor.  Compl. ¶ 5(d).  He returned the hammer four hours later, and was then observed leaving Pierre's home in a blue General Motors vehicle.  Id.

The next day, Jean went to his cousin's home, Cadet Alourdes ("Alourdes"), and asked her to take care of his car because he was afraid the police would arrest him and that he was not permitted to have a car in his possession.  Compl. ¶ 5(e).  Although Jean told Alourdes that he would be back the next day, he never returned.  Id.  Later that day, Jean attempted to pick up Pierre's daughter from Alteme's home.  Compl. ¶ 5(f).  Alteme refused to give Jean the child.  Id.

3

On December 29, 1995, Alourdes received a collect telephone call from Jean, who was in Newark, New Jersey.   Compl. ¶ 5(g).  Alourdes refused to accept the charges and the call was disconnected.  Id.

On January 15, 1996, Pierre's landlord entered her home and noticed that the living room carpet was nailed to the floor and that there were red stains beneath the carpet. Compl.  ¶ 5(i). Canadian police were called to the premises to investigate, shortly after which Pierre's body was discovered in the basement.  Id.  Her body was wrapped in a carpet beneath a pile of debris.  Id. An autopsy report later concluded that Pierre had been beaten to death with a sharp object.  Id. On January 17, 1996, the Director of Criminal and Penal Prosecutions of Quebec charged Jean with one count of murder, following which an arrest warrant was issued.

On January 19, 1996, Canadian authorities obtained from a bus company in Montreal a receipt for a one-way bus ticket, dated December 28, 1995, to Newark, New Jersey, in the name of "Dieuseul Jean."  Compl. ¶ 5(j).  For 17 years, Canadian and American authorities attempted to locate Jean without success.

In early 2013, Jean was identified as residing in Irvington, New Jersey, under the alias "Jean Gardy Mentor."  Compl. ¶ 10.   Fingerprints taken by United States immigration authorities resulted in a match after Jean submitted an application to obtain citizenship.  Id.  He was arrested on March 22, 2013 pursuant to the provisional complaint and arrest warrant, Mag. No. 13-3588 (MF), issued by this Court.  He remains in the custody of the United States Marshal pending extradition.

Contemporaneously filed herewith, the Government of Canada has submitted documents, in accordance with Article 9 of the Extradition Treaty, in support of its extradition request. Because an extradition hearing is not a criminal or civil proceeding, but is *sui generis,* the

government offers this memorandum setting forth the legal principles that govern the hearing to

be held pursuant to 18 U.S.C. § 3184.  While extradition law is an area of law unto itself,

nevertheless, the Supreme Court has expounded on many of the questions over the years and has

settled a number of those principles.

## LEGAL ARGUMENT

### I.      THE ROLE OF THE EXTRADITION JUDGE IS LIMITED

Extradition is primarily an executive responsibility with a specially defined role for a

judicial officer, who is authorized by statute to determine whether to certify to the Secretary of

State that the submitted evidence is "sufficient to sustain the charge."  18 U.S.C. § 3184.  The

Secretary of State, and not the court, makes the decision regarding whether the fugitive should be

surrendered to the requesting country.  18 U.S.C. §§ 3184, 3186; *Martin v. Warden, Atlanta*

*Penitentiary*, 993 F.2d 824, 828 (11th Cir. 1993); *Lo Duca v. United States,* 93 F.3d 1100, 1110

n.10 (2d Cir. 1996).  The Executive Branch remains primarily responsible for extradition, while

the extradition judge is assigned the limited duty of determining the sufficiency of the request

under the applicable treaty provisions.  *Martin,* 993 F.2d at 828-829.  That judicial function is

carried out by conducting the hearing pursuant to Title 18, United States Code, Section 3184.

At the hearing, the court should consider the evidence presented on behalf of the

requesting country and determine whether the legal requirements for certification, as defined in

the treaty, statutes and case law, have been established.  If any explanatory evidence is offered

by the fugitive, the court rules on its admissibility.  Once the evidentiary record is complete, the

court should make written findings of fact and conclusions of law as to each of the elements for

certification, including separate findings for each offense as to which extradition is sought.

*Shapiro v. Ferrandina*, 478 F.2d 894 (2d Cir. 1973), cert. dismissed, 414 U.S. 884 (1973).  If the

5

court certifies the evidence to the Secretary of State, the court must commit the fugitive to the custody of the United States Marshal to await the further determination by the Secretary regarding surrender to the representatives of the requesting state.  The court provides its certification to the Secretary of State together with a copy of the evidence and a transcript of any testimony presented at the hearing.  18 U.S.C. § 3184; *see Sidali*, 107 F.3d at 195 (certify to the Secretary of State).  The decision of whether to surrender the fugitive to the requesting country rests with the Executive Branch, specifically with the Secretary of State.

In fulfilling its function under Section 3184, the judicial officer should liberally construe the applicable extradition treaty in order to effect its purpose, namely, the surrender of fugitives to the requesting country.  *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 14 (1936); *Factor v. Laubenheimer*, 290 U.S. 276, 301 (1933).  In discussing the application of this rule, the Second Circuit in *U. S. v. A. L. Burbank & Co., Ltd.*, 525 F.2d 9, 14 (2d Cir. 1975), wrote:

> [T]reaties are to be broadly construed to enable the intent of the treaty to be enforced.
> According to the accepted canon, we should construe the treaty liberally to give
> effect to the purpose which animates it. Even where a provision of a treaty fairly
> admits of two constructions, one restricting, the other enlarging, rights which may
> be claimed under it, the more liberal interpretation is to be preferred.

In order to carry out a treaty obligation, the treaty "should be construed more liberally than a criminal statute or the technical requirements of criminal procedure," *Factor*, 290 U.S. at 298.  This country does not expect foreign governments to be versed in our criminal laws and procedures.  *Grin v. Shine*, 187 U.S. 181, 184 (1902).  Thus, "[f]orm is not to be insisted upon beyond the requirements of safety and justice."  *Fernandez v. Phillips,* 268 U.S. 311, 312 (1925), *cited in Hoxha v. Levi*, 465 F.3d 554, 560 (3d Cir. 2006).

Statements by the United States Department of State as to interpretation of treaties should be given great weight by the court.  *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 168

(1999); *Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 184-185 (1982) ("Although not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight."); *Ahmad v. Wigen*, 726 F. Supp. 389, 402 (E.D.N.Y. 1989), *aff'd,* 910 F.2d 1063 (2d Cir. 1990) ("The State Department's view of treaty interpretation deserves deference, unless it represents a substantial departure from national or international norms.").

## II.   THE REQUIREMENTS FOR CERTIFICATION ARE WELL-SETTLED

An extradition certification is in order where:  (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the court has jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) the crimes for which surrender is requested are covered by the applicable treaty; and (5) there is sufficient evidence to support a finding of probable cause as to each charge for which extradition is sought.  *Fernandez,* 268 U.S. at 312; *Sidali*, 107 F.3d at 195.

### A.  Authority of the Court Over the Proceedings

The extradition statute authorizes proceedings to be conducted by "any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State."  Consequently, both magistrate judges and district judges may render a "certification" under Section 3184.  *See Austin v. Healey,* 5 F.3d 598, 601-602 (2d Cir. 1993) (magistrate had authorization to conduct the extradition hearing without specific delegation of authority), *cert. denied*, 510 U.S. 1165 (1994); *Ward v. Rutherford*, 921 F.2d 286, 287 (D.C. Cir. 1990) (both statute and local rule made plain magistrate's authority to conduct extradition hearing); *Jimenez v. Aristeguieta*, 311 F.2d

7

547, 553-555 (5th Cir. 1962) (any judicial officer in class authorized by statute may conduct extradition hearing), *cert. denied,* 373 U.S. 914 (1963).

### B.  Jurisdiction Over the Fugitive

It is also well settled that the court has jurisdiction over a fugitive found within its jurisdictional boundaries.  18 U.S.C. § 3184 (court "may, upon complaint made under oath, charging any person found within his jurisdiction,  .  .  .  issue [its] warrant for the apprehension of the person so charged").  *Pettit v. Walshe*, 194 U.S. 205, 219 (1904); *Grin*, 187 U.S. 181; *Shapiro,* 478 F.2d at 899 (a complaint and warrant omitting the word "found" does not invalidate the arrest of the fugitive or result in a  lack of jurisdiction).

### C.  Treaty in Full Force and Effect

The extradition statute, 18 U.S.C. § 3184, provides for extradition in instances in which a treaty or convention is in force between the requesting state and the United States.  *See, e.g., United States ex rel Saroop v. Garcia,* 109 F.3d 165, 171 (3d Cir. 1997).  In this case, the government has provided a declaration from Alexis Blane, Esq., an attorney in the Office of the Legal Adviser, Department of State, attesting that there exists a treaty in full force and effect between the United States and Canada.  Again, the Department of State's determination is entitled to deference from the court.  *Terlinden v. Ames*, 184 U.S. 270, 288 (1902); *Kastnerova v. United States,* 365 F.3d 980, 985-987 (11th Cir. 2004), *cert. denied,* 541 U.S. 1090 (2004)*; United States ex rel. Saroop*, 109 F.3d at 171; *Then v. Melendez*, 92 F.3d 851, 854 (9th Cir. 1996).

### D.  Crimes Covered by the Treaty

Extradition treaties create an obligation for the United States to surrender fugitives under the circumstances defined in the treaty.  Here, Article 1 of the Treaty provides for the return of

fugitives charged with or convicted of offenses covered by the treaty. *See* Extradition Treaty, U.S.-Can., art. 1, Dec. 3, 1971, 27 U.S.T. 986. The documents submitted by the requesting state establish that Jean has been charged in Canada with the crime of murder, in violation of section 229 and section 231 of the Criminal Code of Canada.

Article 2 of the Treaty applicable here defines offenses as extraditable if they are "listed in the Schedule annexed to [the] treaty…provided these offenses are punishable by the laws of both Contracting Parties by a term of imprisonment exceeding one year." Extradition Treaty, U.S.-Can., art. 2, Dec. 3, 1971, 27 U.S.T. 986. When, as here, the treaty contains a list of extraditable offenses, the court should examine the conduct described in the extradition documents and decide whether it constitutes an offense among those listed in the Schedule annexed to the Treaty. *Factor,* 290 U.S. 276. In determining whether an offense for which extradition is requested is among those listed in the relevant treaty,

> a narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements. Considerations which should govern the diplomatic relations between nations, and the good faith of treaties, as well, require that their obligations should be liberally construed so as to effect the apparent intention of the parties to secure equality and reciprocity between them. For that reason, if a treaty fairly admits of two constructions, one restricting the rights which may be claimed under it, and the other enlarging it, the more liberal construction is to be preferred.

*Id.* at 293-294.

### E.  Probable Cause that the Fugitive Has Committed the Offense

The standard of proof to find the evidence "sufficient to sustain the charge . . ." pursuant to Section 3184 is the familiar domestic requirement of probable cause. The court must conclude there is probable cause to believe that the crime charged by Canada was committed and the person before the court committed it. *Hoxhai*, 465 F.3d at 561; *Sindona v. Grant,* 619 F.2d 167 (2d Cir.

1980).  The evidence is sufficient and probable cause is established if a person of ordinary

prudence and caution can conscientiously entertain a reasonable belief in the probable guilt of the

accused.  *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975).  The Supreme Court stated in *Benson v.*

*McMahon*, 127 U.S. 457, 463 (1888), that:

> the proceeding before the commissioner is not to be regarded as in the nature of a
> final trial by which the prisoner could be convicted or acquitted of the crime
> charged against him, but rather of the character of those preliminary examinations
> which take place every day in this country before an examining or committing
> magistrate for the purpose of determining whether a case is made out which will
> justify the holding of the accused, either by imprisonment or under bail, to
> ultimately answer to an indictment, or other proceeding, in which he shall be finally
> tried upon the charge made against him.

*See also Collins*, 259 U.S. at 316 ("The function of the committing magistrate is to determine

whether there is competent evidence to justify holding the accused to await trial, and not to

determine whether the evidence is sufficient to justify a conviction."); *Fernandez*, 268 U.S. at 312

("Competent evidence to establish reasonable grounds is not necessarily competent evidence to

convict.").  *Accord, Afanasjev v. Hurlburt*, 418 F.3d 1159, 1165 n.11 (11th Cir. 2005), cert. denied,

546 U.S. 993 (2005); *Barapind v. Enomoto*, 400 F.3d 744, 752 (9th Cir. 2005); *Sidali*, 107 F.3d at

199

### III.  EXTRADITION IS SUI GENERIS AND FOLLOWS UNIQUE PROCEDURES

#### A.    An Extradition Hearing Is Not a Criminal Proceeding

The extradition hearing prescribed by 18 U.S.C. § 3184 is unique in nature.  *See, e.g.,*

*Martin,* 993 F.2d at 828; *Jhirad v. Ferrandina*, 536 F.2d 478, 482 (2d Cir. 1976) (extradition is *sui*

*generis*), *cert. denied,* 429 U.S. 833 (1976).  As described in *Jhirad*, an extradition hearing is *sui*

*generis*, meaning its own type of case, with its structure and process defined by statute and treaty.

10

*Id.* An extradition hearing is not a criminal proceeding; its purpose is to decide the sufficiency of the charge under the treaty, not guilt or innocence. *Neely v. Henkel*, 180 U.S. 109, 123 (1901); *Benson*, 127 U.S. at 463; *Simmons v. Braun,* 627 F.2d 635, 636 (2d Cir. 1980). The limited nature of the hearing has resulted in special procedural and evidentiary rules that apply. For example, the person whose extradition is sought is not entitled to the rights available in a criminal trial. *Neely,* 180 U.S. at 122 (rights available to one charged with criminal offense in this country not applicable to offenses committed outside the United States against the laws of another country); *accord, Charlton v. Kelly*, 229 U.S. 447, 461 (1913); *Murphy v. United States*, 199 F.3d 599, 603 (2d Cir. 1999) (rights and remedies clause in an extradition treaty do not entitle the fugitive to broad constitutional protections). The purpose of an extradition hearing under § 3184 is not to try the underlying charge. That is for the foreign court. *Neely*, 180 U.S. at 123.

As such, the Federal Rules of Criminal Procedure do not apply to extradition proceedings. Rule 54(b)(5) states: "These rules are not applicable to extradition and rendition of fugitives." The Federal Rules of Evidence are also inapplicable. Rule 1101(d)(3) provides: "The rules (other than with respect to privileges) do not apply . . . [to p]roceedings for extradition or rendition." *See Afanasjev*, 418 F.3d at 1164-1165; *Melia v. United States*, 667 F.2d 300 (2d Cir. 1981); *Murphy*, 199 F.3d at 603 (rights and remedies clause in an extradition treaty do not entitle the fugitive to broad constitutional protections).

Moreover, the fugitive has no right to discovery, *Prasoprat v. Benov*, 421 F.3d 1009, 1014 (9th Cir. 2005), *cert. denied*, 546 U.S. 1171 (2006); *Koskotas v. Roche,* 931 F.2d 169, 175 (1st Cir.1991); *Messina v. United States*, 728 F.2d 77, 80 (2d Cir. 1984); he has no right to cross examine witnesses who might testify at the hearing, *Oen Yin-Choy v. Robinson*, 858 F.2d 1400,

11

1407 (9th Cir. 1988), *cert. denied*, 490 U.S. 1106 (1989); *Messina,* 728 F.2d at 80; his right to

present evidence is severely limited, *id.*; there is no Sixth Amendment right to a speedy trial, *Yapp*

*v. Reno,* 26 F.3d 1562, 1565 (11th Cir. 1994); *Martin*, 993 F.2d at 829; *Jhirad,* 536 F.2d at 485

n.9; the Fifth Amendment guarantee against double jeopardy does not apply to successive

extradition proceedings, *Collins,* 262 U.S. at 429; *Matter of Extradition of McMullen*, 989 F.2d

603, 612-613 (2d Cir. 1993), *cert. denied*, 510 U.S. 913 (1993); the exclusionary rule is not

applicable, *Romeo v. Roache,* 820 F.2d 540, 545 (1st Cir. 1987); *Simmons*, 627 F.2d at 636-637;

and the defendant does not have the right to confront his accusers, *Bingham v. Bradley,* 241 U.S.

511, 517 (1916).

### B.   Extradition Hearings Rely on Written Submissions and Do Not Required Live Witnesses

A certification of extradition may be and typically is based entirely on the authenticated

documentary evidence and information provided by the requesting government.  *See, e.g., Bovio v.*

*United States*, 989 F.2d 255, 259-261 (7th Cir. 1993) (Swedish investigator's statement sufficient

to establish probable cause); *Eain v. Wilkes*, 641 F.2d 504, 509-511 (7th Cir. 1981), *cert. denied,*

454 U.S. 894 (1981) (sworn statement of cooperator, corroborated by police officer affidavit and

affidavit of second civilian witness sufficient); *O'Brien v. Rozman,* 554 F.2d 780, 783 (6th Cir.

1977); *Shapiro,* 478 F.2d at 902-903; *Matter of Extradition of Mainero*, 990 F. Supp. 1208, 1212-

1213 (S.D. Cal. 1997) (statements of co-conspirators and other witnesses sufficient in extradition

to Mexico for murder); *Castro Bobadilla v. Reno*, 826 F. Supp. 1428, 1433-1434 (S.D. Fla. 1993)

(documents and statements sufficient for extradition to Honduras), *aff'd.* 28 F.3d 116 (11th Cir.

1994); *In re Edmonson*, 352 F. Supp. 22, 24 (D. Minn. 1972).  The finding may also be based upon

written statements by the foreign prosecutor or judge summarizing the evidence.  *Rice v. Ames,*
180 U.S. 371, 375-376 (1901); *accord Glucksman v. Henkel*, 221 U.S. 508, 513-514 (1911).

      The federal statute and the applicable treaty govern both the nature of and the admissibility
of the evidence at an extradition hearing.  The treaty applicable in this case lists at Article 9 the
required submissions by the Government of Canada**,** specifically:

> The request shall be accompanied by a description of the person sought, a statement
> of the facts of the case, the text of the laws of the requesting State describing the
> offense and prescribing the punishment for the offense, and a statement of the law
> relating to the limitation of the legal proceedings…When the request relates to a
> person who has not yet been convicted, it must also be accompanied by a warrant of
> arrest issued by a judge or other judicial officer of the requesting State and by such
> evidence as, according to the laws of the requesting State, would justify his arrest
> and committal for trial if the offense had been committed there, including evidence
> proving the person requested is the person to whom the warrant of arrest refers.

Extradition Treaty, U.S.-Can., art. 9(2)-(3), Dec. 3, 1971, 27 U.S.T. 990.

      Section 3190 of Title 18 provides that "properly and legally authenticated" documentary
evidence including "depositions, warrants, or other papers or copies thereof *shall be admitted.*" *See*
18 U.S.C. § 3190 (*emphasis added*).[2]  *See Afanasjev*, 418 F.3d at 1164; *see also Collins*, 259 U.S.
at 313; *Shapiro,* 478 F.2d at 902-903.  Proof that the authentication is proper and legal exists if the
documents are accompanied by the certificate of an appropriate U.S. diplomatic or consular officer
in the requesting country attesting that the documents would be admissible for similar purposes in
that country.  18 U.S.C. § 3190.  The documents filed in this case are accompanied by a

---

   [2] "Depositions, warrants or other papers or copies thereof offered in evidence upon a hearing of any
extradition case shall be received and admitted as evidence on such hearing for all purposes of such hearing
if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes
by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate
of the principal diplomatic or consular officer of the United States resident in such foreign country shall be
proof that the same, so offered, are authenticated in the manner required." 18 U.S.C. § 3190.

certification of Sylvia D. Johnson, Consul General of the United States of America at Ottawa, Canada, attesting to the authenticity of the foreign official's signature

Extradition treaties do not require or even anticipate the testimony of live witnesses[3] at the hearing because to do so "would defeat the whole object of the treaty." *Yordi v. Nolte*, 215 U.S. 227, 231 (1909); *see also Bingham*, 241 U.S. at 517; *Afanasjev,* 418 F.3d at 1163-1165; *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986); *Shapiro,* 478 F.2d at 902 (2d Cir. 1973).  Hearsay evidence is admissible at extradition hearings and fully supports the court's findings leading to a certification under Section 3184.  *Collins,* 259 U.S. at 317; *Hoxha,* 465 F.3d at 561.  In *Bingham*, the Supreme Court rejected the respondent's claim that *ex parte* witness affidavits submitted in support of his extradition to Canada should not be considered because he had not had the opportunity to cross-examine those witnesses.  The Court referred to the applicable treaty language, which obligated the United States to extradite "upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial, if the crime or offense had there been committed."  *Bingham*, 241 U.S. at 517.  As 18 U.S.C. § 3190 does today, its predecessor, applicable in *Bingham*,  provided for the admissibility at the extradition hearing of depositions, warrants and similar documents upon proper certification by the U.S. diplomatic or consular officer.  The Court in *Bingham* said:

> It is one of the objects of § 5170 [today, § 3190] to obviate the necessity of confronting the accused with the witnesses against him; and a construction of this section, or of the treaty, that would require the demanding government to send its

---

[3] No United States extradition treaty, even those most recently negotiated, specifically addresses live witnesses.  The Extradition Treaty between the United States and Canada refers only to the submission of documents.  *See* Extradition Treaty, U.S.-Can., art. 10, Dec. 3, 1971, 27 U.S.T. 991.

> citizens to another country to institute legal proceedings, would defeat the whole
> object of the treaty.

*Id.*  That principle of extradition law is as firmly-rooted today as it was in 1916 when the Supreme

Court decided *Bingham*.[4]  *See Zanazanian v. United States*, 729 F.2d 624, 626-627 (9th Cir. 1984)

(applying *Bingham* to extradition to Sweden); *Shapiro*, 478 F.2d at 902  (obviating necessity of

confronting accused with witnesses against him is "one of the prime objects of bi-lateral

extradition agreements"); *Surrender of Ntakirutimana*, 988 F. Supp. 1038, 1042 (S.D. Tex. 1997),

*aff'd*, 184 F.3d 419 (5th Cir. 1999), *cert. denied,* 528 U.S. 1135 (2000).  Even the advent of

modern transportation and communication has not changed this firmly-rooted posture of the U.S.

courts.  *See Shapiro*, 478 F.2d at 902.

### C.     The Fugitive's Evidence Is Very Limited, As In a Preliminary Hearing

Due to the nature and limited purpose of an extradition hearing under Section 3184 and the

importance of the international obligations of the United States under an extradition treaty, a

fugitive's opportunity to challenge the evidence introduced against him is very circumscribed.  *See*

*Hoxha,* 465 F.3d at 561 (the range of evidence that a defendant may introduce as to probable cause

at an extradition hearing is limited to two kinds: inadmissible "contradictory evidence," which

merely conflicts with the government's evidence, and admissible "explanatory evidence," which

entirely eliminates probable cause).  A fugitive may not introduce evidence that contradicts the

evidence submitted on behalf of the requesting country, but may introduce evidence explaining the

submitted evidence.  "Generally, evidence that explains away or completely obliterates probable

---

[4] The principle dates back well into the 19th century.  In *In re Heilborn*, 11 F. Cas 1025, 1029 (S.D. N.Y. 1854), the district court ordered extradition based upon a presentation of documentary and other hearsay evidence.

cause is the only evidence admissible at an extradition hearing, whereas evidence that merely
controverts the existence of probable cause, or raises a defense, is not admissible." *Barapind*, 400
F.3d at 749 (quoting *Mainero v. Gregg*, 164 F.3d 1199, 1207, n.7 (9th Cir. 1999)); *see also Hoxha*,
465 F.3d at 561; *Matter of Extradition of Singh,* 124 F.R.D. 571, 576 (D.N.J. 1987) *(*quoting
*Petruchansky*).

     The Supreme Court in *Collins,* 259 U.S. 309, quoted with approval the district court's
reasoning in *In re Wadge*, 15 F. 864, 866 (S.D.N.Y. 1883), elucidating why the scope of an
extradition hearing is very limited.  In *Wadge*, the district court rejected the argument that a
fugitive should be given an extensive hearing in the extradition proceedings:

> If this were recognized as the legal right of the accused in extradition proceedings,
> it would give him the option of insisting upon a full hearing and trial of his case
> here; and that might compel the demanding government to produce all its evidence
> here, both direct and rebutting, in order to meet the defense thus gathered from
> every quarter.  The result would be that the foreign government though entitled by
> the terms of the treaty to the extradition of the accused for the purpose of a trial
> where the crime was committed, would be compelled to go into a full trial on the
> merits in a foreign country, under all the disadvantages of such a situation, and
> could not obtain extradition until after it had procured a conviction of the accused
> upon a full and substantial trial here.  This would be in plain contravention of the
> intent and meaning of the extradition treaties.

*Collins,* 259 U.S. at 316 (*quoting Wadge,* 15 F. at 866); *accord Charleton v. Kelly,* 229 U.S. 447,
461 (1913).

     The extent to which the fugitive may offer explanatory proof is largely within the
discretion of the committing judicial officer.  *Koskotas*, 931 F.2d at 175; *United States ex rel*
*Petrushansky v. Marasco*, 325 F.2d 562, 567 (2d Cir. 1963), *cert. denied*, 376 U.S. 952 (1964)
(and cases cited therein); *Singh,* 124 F.R.D. at 576.  The category of explanatory evidence is not
large in light of the limited purpose of the hearing, *i.e.,* to determine the sufficiency of the evidence

to sustain the charge, and the overarching goal of the proceeding, which is to effectuate the purposes of the treaty.  The extradition hearing excludes evidence that requires the court to make determinations outside of the scope of the hearing or within the province of the ultimate trier of fact, particularly when those determinations rest on foreign law.  Such evidence exceeds the limits of "explanatory" or "obliterating" evidence and is not properly before the court.  *In re Solis*, 402 F. Supp.2d 1128, 1132 (C.D. Ca. 2005).

In applying the prohibition on considering "contradictory evidence" and the allowance of "explanatory evidence," several courts, including courts in this district, have followed the explanation of these concepts as clarified in *Matter of Sindona*:

> The distinction between "contradictory evidence" and "explanatory evidence" is difficult to articulate.  However, the purpose behind the rule is reasonably clear.  In admitting "explanatory evidence," the intention is to afford an accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and having some reasonable chance of negating a showing of probable cause.  The scope of this evidence is restricted to what is appropriate to an extradition hearing.  The decisions are emphatic that the extraditee cannot be allowed to turn the extradition hearing into a full trial on the merits.

*Matter of Sindona*, 450 F. Supp. 672, 685 (S.D. N.Y. 1978), *aff'd*, 619 F.2d 167 (2d Cir. 1980); *see Singh,* 124 F.R.D. at 573 (citing *Sindona*).

### D. The Extradition Hearing Excludes Technical and Affirmative Defenses

A court should reject defenses against extradition that "savor of technicality," as they are particularly inappropriate in dealings with a foreign nation.  For example, a variance between the charges pending in the foreign state and the complaint filed on behalf of that state in our federal courts is not a defense to surrender.  *Glucksman*, 221 U.S. at 513-514; *accord Bingham*, 241 U.S. at 517; *United States ex rel. Bloomfield v. Gengler*, 507 F.2d 925, 927-1024 (2d Cir. 1974); *Shapiro,* 478 F.2d at 904.

It is also well settled that affirmative defenses to the merits of the charge are not to be entertained in extradition hearings.  *Charlton,* 229 U.S. at 462; *Collins,* 259 U.S. at 316-317; *Hooker v. Klein,* 573 F.2d 1360, 1368 (9th Cir. 1978), *cert. denied,* 439 U.S. 932 (1978); *DeSilva v. DiLeonardi,* 125 F.3d 1110, 1112 (7th Cir. 1997), *cert. denied,* 525 U.S. 810 (1998)*.*  A fugitive may not introduce evidence that (1) merely conflicts with the evidence submitted on behalf of the demanding state, *Collins,* 259 U.S. at 315-317; *Hoxha,* 465 F.3d at 561; (2) attempts to establish an alibi, *Shapiro,* 478 F.2d at 901; (3) suggests an insanity defense, *Charlton,* 229 U.S. at 462; or (4) seeks to impeach the credibility of the demanding country's witnesses, *Bovio,* 989 F.2d at 259; *Shapiro*, 478 F.2d at 904-905 (judge did not error in not allowing witness testimony on behalf of the fugitive because the testimony would have contradicted not explained).  These issues, which require factual and credibility determinations, are for the court in the requesting country to resolve at a trial of the charges.

### E.    The Executive Considers Matters Other Than Sufficiency; Rule of Non-Inquiry

Other than the sufficiency of the evidence, all matters that may be raised by the fugitive as defenses to extradition are to be considered by the Secretary of State, not by this Court.  *See* 18 U.S.C. §§ 3184, 3186.  In making extradition determinations, "[t]he Secretary exercises broad discretion and may properly consider factors affecting both the individual defendant as well as foreign relations - factors that may be beyond the scope of the magistrate judge's review." *Sidali,*107 F.3d at 195.  The Secretary takes into account humanitarian claims and applicable statutes, treaties, or policies regarding appropriate treatment in the receiving country.  *See Ntakirutimana v. Reno*, 184 F.3d 419, 430 (5th Cir. 1999), *cert. denied*, 528 U.S. 1135 (2000). This is consistent with the long-held understanding that surrender of a fugitive to a foreign

government is "purely a national act . . . performed through the Secretary of State," within the Executive's "powers to conduct foreign affairs." *See In re Kaine*, 55 U.S. 103, 110 (1852).

Therefore, under this constitutionally-based rule of judicial non-inquiry, a fugitive's contention that the extradition request is politically motivated or that the justice system of the requesting state is unfair should be addressed by the Secretary of State.  It is not the role of the court to look behind the extradition request to the motives of the requesting country.  *Ordinola v. Hackman*, 478 F.3d 588, 604 (4th Cir. 2007), *cert. denied*, 128 S. Ct. 373 (2007) ("the motives of the requesting government are irrelevant to our decision" and "must be addressed to the Secretary of State"); *In re Mackin*, 668 F.2d 122, 133 (2d Cir. 1981) (a court should not "probe the motives of a requesting government").  Likewise, the court should not investigate the fairness of the requesting country's criminal justice system.  *United States v. Lui Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997) ("It is not that questions about what awaits the relator in the requesting country are irrelevant to extradition; it is that there is another branch of government, which has both final say and greater discretion in these proceedings, to whom these questions are more properly addressed").  *See also Prasoprat,* 421 F.3d at 1016; *Singh,* 124 F.R.D. at 130.

Similarly, the Secretary of State has sole discretion under 18 U.S.C. § 3186 and the relevant treaty to determine whether a request for extradition should be denied on humanitarian grounds because of procedures or treatment awaiting the surrendered fugitive.  *See Quinn v. Robinson,* 783 F.2d 776, 790-791 (9th Cir. 1986), *cert. denied,* 479 U.S. 882 (1986); *Ahmad,* 910 F.2d at 1066 ("the degree of risk to [the accused's] life from extradition is an issue that properly falls within the *exclusive purview* of the executive branch.")(emphasis in original).  Respect for and confidence in the Executive's exercise of discretion is well placed, as stated in *Ahmad*:

the district court proceeded to take testimony from both expert and fact witnesses and received extensive reports, affidavits, and other documentation concerning Israel's law enforcement procedures and its treatment of prisoners. This, we think, was improper.  The interests of international comity are ill-served by requiring a foreign nation .  .  . to satisfy a United States district judge concerning the fairness of its laws and the manner in which they are enforced.  It is the function of the Secretary of State to determine whether extradition should be denied on humanitarian grounds.  So far as we know, the Secretary never has directed extradition in the face of proof that the extraditee would be subjected to procedures or punishment antipathetic to a federal court's sense of decency.  Indeed, it is difficult to conceive of a situation in which a Secretary of State would do so.

*Ahmad,* 910 F.2d at 1067; accord, *Martin*, 993 F.2d at 830 ("humanitarian consideration are matters properly reviewed by the Department of State").

Further, a fugitive's contention that he or she will be tried in the extraditing country for crimes other than those for which extradition will be granted must be rejected as baseless or, if not baseless, as beyond the responsibility of the court, for the United States government does not presume that the demanding government will seek a trial in violation of a treaty.  *Bingham,* 241 U.S. at 514.  As the district court noted in *Gallina v. Fraser*, "the Secretary of State of the United States would not authorize the surrender of a fugitive .  .   . to be punished for non-extraditable crimes, and  .  .  . any extradition would be so conditioned as to negate this possibility."  177 F. Supp. 857, 867 (D. Conn. 1959), *aff'd,* 278 F.2d 77 (2d Cir. 1960).

## CONCLUSION

WHEREFORE, the United States requests that the court conduct a hearing, pursuant to Title 18, United States Code, Section 3184, to determine that the submission on behalf of Canada is sufficient to sustain each charge under the provisions of the Treaty and to certify Jean's extradition for the charge to the Secretary of State for possible surrender to Canada.

Respectfully submitted,

PAUL J. FISHMAN
United States Attorney


___/s/ Elizabeth M. Harris_____
ELIZABETH M. HARRIS
Assistant United States Attorney

21