

U.S. Department of Justice
*United States Attorney*
*District of New Jersey*

---

*Elizabeth M. Harris*              *970 Broad Street, Suite 700*         *(973)645-2913*
*Assistant United States Attorney*  *Newark, New Jersey 07102*

September 6, 2013

Honorable Mark Falk
United States Magistrate Judge
District of New Jersey
Martin Luther King, Jr. U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

      Re:    <u>In the Matter of the Extradition of Dieuseul Jean</u>
              Mag. No. 13-3588

Dear Judge Falk,

      Please accept this letter brief in lieu of a more formal response to the Motion to Stay Extradition Proceedings filed by Dieuseul Jean in the above-referenced matter. Though he has yet to file a petition for a writ of habeas corpus, Jean seeks a stay pending the district court's review of this court's order certifying his extradition to Canada, and lasting until "any other appeals have been exhausted." Def. Motion at ¶ 10. For the following reasons, the Government opposes the motion.

      As an initial matter, Jean cites no case law to support a stay of the order certifying extradition pending the filing of *all future appeals*. While the extradition court may issue an order staying its own decision pending habeas review by the district court, it cannot issue an order binding the subsequent decision of a district court pending review by the United States Court of Appeals for the Third Circuit. See <u>Hilton v. Braunskill</u>, 481 U.S. 770, 777 (1987) ("[T]he traditional stay factors contemplate *individualized* judgments in each case.") (emphasis added).

      Even at this stage, however, Jean's motion should be denied because he has not met his burden of demonstrating that any of the factors supporting issuance of a stay are present, i.e. that (1) there is a strong likelihood that he will succeed on the merits of his habeas petition; (2) he will be irreparably harmed absent a stay; (3) the United States will not be substantially injured by further delay in fulfilling its international treaty obligations; and (4) the public interest lies in favor of further delay in this case.

      First, Jean cannot demonstrate the likelihood of success on the merits of a habeas petition. The Court considered carefully all of the evidence presented by the Government in

support of extradition and concluded that probable cause existed for Canada to charge Jean with the murder of Juthlande Pierre.

Second, Jean cannot demonstrate irreparable harm because the Secretary of State will not proceed with the deliberative process as to extradition and surrender while habeas litigation is ongoing before the district court.  Jean, however, has not yet filed a habeas petition.  In the absence of such a filing, a stay order will delay unnecessarily the extradition process.  Jean should seek habeas relief by filing a petition within the two-month time frame provided for in 18 U.S.C. § 3188.  To the extent Jean is not able to file a fulsome petition at this time, he should file a form petition and later supplement the petition by filing a memorandum of law.  28 U.S.C. § 2242 (habeas petition "may be amended or supplemented").

In that regard, the foreign policy interests of the United States would be substantially injured by unwarranted delay in meeting its responsibilities under the U.S./Canada extradition treaty.

Finally, the public interest lies with the timely enforcement of the terms of treaties between the countries, which includes extradition of persons who have violated the laws of the contracting country—in this case by committing the crime of first degree murder.

I.  **LEGAL ARGUMENT**

   A.  **Legal Standard**

A federal court's power to stay an action is "part of its traditional equipment for the administration of justice."  Nken v. Holder, 556 U.S. 418, 421 (2009). A stay is an "intrusion into the ordinary processes of administration and judicial review," and therefore, not a matter of right.  Id. at 427. It is subject to the court's discretion and is exercised only if warranted by the "circumstances of the particular case."  Id. (internal citations omitted).  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." Id. at 434-35.  Courts consider four traditional factors before issuing a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably harmed absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  Id. at 425-26 (quoting Hilton, 481 U.S. 776); accord Leiva-Perez v. Holder, 640 F.3d 962, 964 (9th Cir. 2011); In re World Trade Ctr. Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007).

"The first two factors of the traditional standard are the most critical." Nken, 556 U.S. at 434.  The first factor, likelihood of success on the merits, requires the applicant to show at least "a substantial case for relief on the merits."  Leiva-Perez, 640 F.3d at 968.  The second factor requires an even stronger showing: the applicant must demonstrate that irreparable harm is "probable," or more likely than not, if the stay is denied.  Id. at 968. The third and fourth factors, prejudice to the nonmoving party and public interest, "merge when the Government is the opposing party." Nken, 556 U.S. at 435.  Ultimately, Jean must show that "irreparable harm is probable and either: (a) a strong likelihood of success on the merits and that the public interest

does not weigh heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships tips sharply in the [moving party's] favor." Leiva-Perez, 640 F.3d at 970.

Moreover, in an international extradition case such as this one, the court must "consider 'strongly' the public interest as an additional factor." Artukovic v. Rison, 784 F.2d 1354, 1355 (9th Cir. 1986) (quoting Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir. 1983)). The public interest to be measured is not the personal interest of Petitioner, but is the public interest in law enforcement and equal respect for the law as set forth in treaties between contracting countries such as the United States and Canada.

### B. Jean cannot meet the rigorous standard for obtaining a stay.

The United States opposes Jean's motion for a stay because he cannot meet the rigorous legal standard for such a stay. Indeed, he fails to cite the relevant case law or explain how his case meets the stringent criteria required before a stay will be issued.

#### 1. Jean has no probability of success on the merits.

The purported basis for Jean's requested stay is that he will be removed before he can exercise his right to judicial review through the habeas process. However, given the limited nature of habeas review in extradition proceedings, and the Court's thorough consideration of evidence presented at the extradition hearing, it is highly unlikely that Jean will prevail in a habeas proceeding.

An individual seeking to challenge a magistrate judge's extradition order must pursue a writ of habeas corpus under 28 U.S.C. § 2241. Hoxha v. Levi, 465 F.3d 554, 560 (3d Cir. 2006). The Supreme Court has repeatedly held that habeas review of extradition is more limited than appeal. See e.g., Fernandez v. Phillips, 268 U.S. 311, 312 (1925) (habeas corpus "cannot take the place of a writ of error"); Collins v. Miller, 252 U.S. 364, 369 (1920) ("it is ordinarily beyond the scope of the review afforded by a writ of habeas corpus to correct error in the proceedings"). In evaluating whether a fugitive in an international extradition case has shown a strong likelihood of success on the merits, a reviewing court must also consider the limited scope of habeas review of a certification order. Sidali v. I.N.S., 107 F.3d 191, 197 (3d Cir. 1997). Such review is on "extremely limited" grounds, namely (1) whether the magistrate judge had jurisdiction; (2) whether the offense charged is within the Treaty; and (3) whether there was any evidence warranting the finding that there was reasonable ground to believe the accused is guilty. Id. at 195-96; see also Joseph v. Hoover, 254 F. Supp. 2d 595, 598 (D.V.I. 2003); Fernandez, 268 U.S. at 312.

Jean has failed to proffer any legitimate argument why he would succeed on the merits. At the hearing, Jean challenged only one of the four elements necessary to issue a certificate of extradition. He did not contest the enforceability of the treaty between Canada and the United States, that he is charged with murder, or that the crime with which he is charged is an extraditable offense under the Treaty. Instead, Jean asserts that his habeas petition will challenge the finding of probable cause that he killed Juthlande Pierre. Nonetheless, Jean does not identify

a single mistake or misapplication of law.  Without this information, the Court cannot begin to make even an educated guess regarding Jean's likelihood of success on the merits.

As the Court correctly concluded in its August 22, 2013 opinion, Canada sought extradition under the Treaty and provided evidence in proper form and content for the Court to make its findings of fact supporting certification.  The Court found that the evidence detailed in the Extradition Request established probable cause that Jean committed the offense of murder as defined by Canadian law.  In support of its request, Canada provided the certification of Dany Jean, Prosecuting Attorney for the Director of Criminal and Penal Prosecutions of Quebec (the "Jean Certification" or the "Certification").  The Court found that the Jean Certification provided support for each element of the charged offense.  The Certification included a lengthy summary of facts prepared by a detective involved in the investigation and recites all of the evidence pointing to Jean as the perpetrator: the lengthy interaction Jean had with Pierre during the final hours of her life, despite the existence of a restraining order that prevented him from contacting her; the testimony of Pierre's neighbor that Jean borrowed a hammer the day of the murder; the testimony of Jean's cousin that Jean told her the day of the murder that he feared being arrested; the bloody bracelet found at the crime scene that Jean was photographed wearing only days before the murder; the autopsy results concluding that Pierre was asphyxiated and stabbed to death; the one-way bus ticket from Montreal to Newark purchased by Jean; and Jean's fugitive status and discovery 18 years later in Irvington, a city bordering Newark.

As the Court pointed out, the documents submitted by Canada were more than sufficient evidence that Canadian authorities had probable cause to charge Jean with first degree murder.  In the Matter of the Extradition of Dieuseul Jean, 13-3588 (MF), Dkt. No. 15 (Opinion dated August 22, 2013), at 8.  It is well settled that documents and hearsay evidence alone may support a finding of probable cause.  Collins v. Loisel, 259 U.S. 309, 317 (1922); United States v. Kin-Hong, 110 F.3d 103, 120 (1st Cir. 1997) (an extradition hearing "does not require a higher standard of evidence than a probable cause hearing," in which "a finding of probable cause may be based upon hearsay in whole or in part").  See also Sidali, 107 F.3d at 199 ("It is not necessary in extradition proceedings that the evidence against the respondent be such as to convince the committing judge or magistrate of his guilt beyond a reasonable doubt, but only such as to afford reasonable ground to believe that the accused is guilty of the offense charged.").

Under these circumstances and in light of the record that will exist before the district court, Jean cannot prevail on a petition for writ of habeas corpus.

      2.      Jean will not suffer irreparable harm if extradited to Canada.

Because Jean has made no effort to show a strong likelihood that he will succeed on the merits of his Petition, he is hard pressed to articulate how he will be harmed irreparably if he is extradited.  In Nken, the Supreme Court emphasized that the "burden of removal alone cannot constitute requisite irreparable injury."  Nken, 556 at 435.  It is not sufficient that Jean demonstrate a possibility of irreparable injury; Jean must show that "irreparable harm is *probable* if the stay is not granted."  Leiva-Perez, 640 F.3d at 968 (emphasis added).  In any event, a stay is not necessary in this case because the Secretary of State will not proceed with a decision on surrender until the district court rules on Jean's habeas petition, if one is filed.

After the district court completes its limited inquiry in an extradition proceeding, the Secretary of State conducts an independent review of the case to determine whether to issue a warrant of surrender. 18 U.S.C. § 3186. The requesting state must generally move the fugitive within two calendar months of the certification and commitment order. 18 U.S.C. § 3188. However, the Secretary of State will not proceed with the deliberative process as to extradition and surrender while a habeas corpus litigation is ongoing before the district court. Indeed, the Foreign Affairs Manual specifically provides that "if a fugitive seeks judicial review of the extradition judge's finding of extraditability, the Department suspends its final review of the case." 7 FAM 1634.3(f). Thus, a stay is not necessary because the Government will not proceed with a decision on surrender until the district court rules on Jean's habeas petition, if any.

>    3.    Delay will cause injury to the United States and is not in the public interest.

When the government opposes a stay, the traditional factors of harm to the opposing party and weighing the public interest merge. Nken, 556 U.S. at 435; Leiva-Perez, 640 F.3d at 970. The public's interest lies in ensuring that the United States abides by its treaty obligations so that its treaties can be effectively enforced. See, e.g., Artukovic, 784 F.2d at 1356 (denying a stay and finding that the "public interest will be served by the United States complying with a valid extradition application . . . under the treaty, because compliance promotes relations between the two countries, and enhances efforts to establish an international rule of law and order"); see also Ignacio v. INS, 955 F.2d 295, 299 (5th Cir. 1992) (denying stay pending appeal because of the "strong public interest" in deporting aliens who have committed serious drug crimes). The United States can reasonably expect foreign governments to honor their obligations to the United States only if it honors theirs.

The United States has a vital interest in meeting its extradition obligations to its treaty partners and in prosecuting individuals who have committed crimes punishable under U.S. law but who have escaped to foreign soil. Wright v. Henkel, 190 U.S. 40, 62 (1903). A stay that causes further unwarranted delay in the fulfillment of these obligations will harm the credibility of the United States in the international arena and impair its ability to obtain the cooperation of foreign nations in bringing United States fugitives to justice. A timely extradition is a necessary aspect of a functioning extradition relationship.

Here, Jean was charged with first degree murder on or about January 17, 1996. Jean was arrested pursuant to a provisional arrest warrant in March 2013. The documents submitted by Canada in support of its formal request for extradition were certified on May 9, 2013, and the request was filed on June 12, 2013. The Court held an extradition hearing and rendered its decision on August 22, 2013. Excessive delay by the United States in responding to an extradition request can both jeopardize the foreign prosecution and undercut the core objective of extradition relationships in ensuring that fugitives are brought to justice in the country in which their criminal conduct occurred. It is therefore important that the remaining steps leading to a decision on his extradition and surrender be carried out promptly.

## II. CONCLUSION

For the reasons set forth herein, Jean's motion to stay extradition should be denied.

                                       Respectfully Submitted,

                                       PAUL J. FISHMAN
                                       United States Attorney

                                       /s/  Elizabeth M. Harris

                      BY:    ELIZABETH M. HARRIS
                                       Assistant United States Attorney


cc:      Lorraine S. Gauli-Rufo, Esq. (via e-mail)